IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MASOUD H MANJILI,  )
    Plaintiff,  )
  )
v.  )    Civil Action No. 3:26CV91 (RCY)
  )
VIRGINIA COMMONWEALTH  )
UNIVERSITY, *et al.*,  )
    Defendants.  )
  )

**MEMORANDUM OPINION**

This matter is before the Court on Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction ("Motion," ECF No. 2), filed in this Court on February 5, 2026. Therein, Plaintiff Masoud H. Manjili, DVM, PhD, seeks an order—

1. Enjoining Defendants from enforcing or implementing the termination of Plaintiff s tenured faculty appointment effective February 3, 2026;

2. Requiring Defendants to restore and maintain Plaintiffs salary, benefits, academic rank, research access, grant administration authority, and employment status pending final adjudication; and

3. Preserving the status quo ante pending a hearing on a preliminary injunction.

Mot. 1. For the reasons set forth below, the Court will deny the Motion.

**I. BACKGROUND**

Plaintiff has been a tenured Professor at Virginia Commonwealth University ("VCU") since 2018. Compl. ¶ 3, ECF No. 1. From approximately May of 2025 through January of 2026, "Plaintiff raised good-faith written concerns regarding unresolved discrepancies in institutional effort-reporting and payroll records, and sponsor-approval requirements governing federally funded research." *Id.* ¶ 9. "On January 27, 2026, Defendant Kates issued a Letter of Intent to Terminate Plaintiff[']s tenured appointment effective February 3, 2026, copying Defendants

Grover and other senior officials, without initiating or completing the mandatory post-tenure review, remediation, or hearing procedures required by VCU policy." *Id.* ¶ 10. Plaintiff submitted a rebuttal on January 30, 2026, pointing out "the procedural defects, policy violations, and retaliatory nature of the proposed termination." *Id.* ¶ 11. Nevertheless, VCU proceeded to terminate Plaintiff's employment on February 3, 2026. *Id.* ¶¶ 12–15. Plaintiff asserts that this termination ran afoul of "mandatory post-tenure review and adjudicatory procedures" and thus violated his Fourteenth Amendment right to procedural due process. Mot. 2. Plaintiff also asserts that the termination was in retaliation for his protected compliance activity, and that he is suffering and will continue to suffer irreparable harm. *Id.*

## II. STANDARD OF REVIEW

The decision to grant or deny a motion for a temporary restraining order ("TRO") rests in the Court's sound discretion. *Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 579 (2017). Such injunctive relief is issued "not to conclusively determine the rights of the parties, but to balance the equities as the litigation moves forward." *Id.* at 579–80. Specifically, a TRO serves to protect the movant against irreparable harm before a hearing on a preliminary injunction can be held. 11A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2951 (3d ed. 2002).

A TRO is an extraordinary remedy that "may never be obtained as a matter of right." *Id.* § 2948. Thus, the party who moves for a TRO bears the burden to "clearly establish[]" the so-called *Winter* factors: the likelihood of irreparable harm to the movant if the TRO is denied; that the balance of the equities tips in the movant's favor; the likelihood that the movant will succeed on the merits; and that the public interest is furthered by a TRO. *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017) (citing *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008)). The

moving party must also certify "in writing any efforts made to give notice [to the nonmoving party] and the reasons why it should not be required" before a Court can grant a TRO. Fed. R. Civ. P. 65(b)(1)(B).

### III. ANALYSIS

Here, the Court must deny Plaintiff's Motion before even considering the *Winter* factors because Plaintiff has failed to satisfy Rule 65(b)(1)(B)'s notice requirement. Defendants have not yet been served, and Plaintiff did not provide a certified writing explaining any efforts to give notice and reasons why notice should not be required. Fed. R. Civ. P. 65(b)(1)(B).

Even had notice been provided, however, Plaintiff has also not satisfactorily demonstrated a likelihood of success on the merits, and without this critical *Winter* factor, neither a TRO nor preliminary injunctive relief is appropriate.

Specifically, the only even potentially cognizable claim in the Complaint is Plaintiff's claim for injunctive relief as to the individual Defendants, in their official capacities, for violation of his Fourteenth Amendment procedural due process rights, pursuant to 42 U.S.C. § 1983.[1,2] Of

---

[1] Section 1983 states, in part—

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

[2] In Count Two, Plaintiff seeks to assert a claim for "Retaliation" pursuant to 42 U.S.C. § 2000e-3(a), but this retaliation provision only relates to Title VII-protected activity, which Plaintiff does not allege here. *See* 42 U.S.C. § 2000e-3(a) (prohibiting retaliation against employees who have "opposed any practice made an unlawful employment practice *by this subchapter*" (emphasis added)). Thus, Count Two has no likelihood of success. Count Three asserts an unidentifiable claim for "Ultra Vires Action / Failure to Follow Mandatory Tenure Procedures," but cites no legal vehicle entitling Plaintiff to relief, and the Court is unaware of any. Thus, Count Three likewise has no likelihood of success. Finally, as to Count One, which is Plaintiff's Fourteenth Amendment/§ 1983 claim, Plaintiff's claim against Defendant VCU has no likelihood of success, because a state university, as an arm of the state, is not a "person" for purposes of the statute. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The same generally goes for state officials sued in their official capacities. *Id.* However, an official is nonetheless a "person" under § 1983 *when sued for injunctive relief* because "official-capacity actions for prospective relief are not treated as actions against the State." *Id.* at 71 n.10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)); *see also Ex*

those four individual Defendants—Stephen L. Kates, MD, sued in his official capacity as Interim Dean of the VCU School of Medicine and Interim Executive Vice President for Medical Affairs; Amelia Grover, MD, FACS, sued in her official capacity as Senior Associate Dean for Faculty Affairs at VCU; Marlon Levy, MD, MBA, sued in his official capacity as Senior Vice President for Health Sciences; and Defendant Arturo Saavedra, MD, PhD, MBA, sued in his official capacity as Interim Executive Vice President and Provost—Plaintiff only alleges facts suggesting involvement in his termination with respect to Defendants Kates and Grover. *See* Compl. ¶¶ 5–15. As such, he fails to state any claim against Defendants Levy and Saavedra. *See Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974) ("Where a complaint alleges no specific act or conduct on the part of the defendant . . . , the complaint is properly dismissed, even under the liberal construction to be given *pro se* complaints." (citing *U.S. ex rel. Brzozowski v. Randall*, 281 F. Supp. 306, 312 (E.D. Pa. 1968))).

This leaves only Plaintiff's claim as it pertains to Defendants Kates and Grover. To plead that Defendants violated his procedural due process rights under the Fourteenth Amendment, Plaintiff "must allege (1) that he had a 'constitutionally cognizable life, liberty, or property interest;' (2) that he was deprived of that interest by 'some form of state action;' and (3) 'that the procedures employed were constitutionally inadequate.'" *Doe v. Va. Polytechnic Inst. & State Univ.*, 77 F.4th 231, 236 (4th Cir. 2023) (cleaned up) (quoting *Sansotta v. Town of Nags Head*, 724 F.3d 533, 540 (4th Cir. 2013)). Plaintiff's Complaint satisfies prongs one and two. *See Bd. of Regents v. Roth*, 408 U.S. 564, 576–77 (1972) (recognizing that a tenured college professor dismissed during the term of their contract has "interests in continued employment that are

---

*parte Young*, 209 U.S. 123 (1908)). As such, Plaintiff's § 1983 injunctive relief claim against the individual Defendants is the only avenue of relief from the Complaint that is actually available to Plaintiff.

4

safeguarded by due process"); Compl. ¶¶ 10–15 (alleging that he was terminated by Defendants, who are state officials by way of their positions at VCU, a state institution). The question then is whether Plaintiff has alleged facts that, when taken as true, support a finding that the procedures followed by Defendants in effecting Plaintiff's termination "were constitutionally inadequate."

> As stated by the Fourth Circuit,
>
> > [t]he fundamental requirements of due process are "notice and an opportunity to be heard." But our inquiry about the process due is flexible and depends on context. We evaluate whether a given process is constitutionally sufficient by balancing:
> >
> > > (1) 'the private interest that will be affected by the official action,' (2) 'the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards,' and (3) 'the Government's interest, including the . . . fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'

*Doe*, 77 F.4th at 236–37 (first citing *Mallette v. Arlington Cnty. Emps.' Supplemental Ret. Sys. II*, 91 F.3d 630, 640 (4th Cir. 1996); then citing *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976); and then citing *Elhady v. Kable*, 993 F.3d 208, 228 (4th Cir. 2021)).

Here, Plaintiff alleges that he received a Letter of Intent to Terminate on January 7, 2026, identifying a termination date of February 3, 2026. Compl. ¶ 10; Mot. Ex. A, ECF No. 2-3. Plaintiff asserts that the Letter and its concomitant termination process represents a violation of his procedural due process rights insofar as it threatened termination "without initiating or completing the mandatory post-tenure review, remediation, or hearing procedures required by VCU policy." Compl. ¶ 10; Mot. 2. However, the Letter of Intent itself, attached to the Motion for Preliminary Injunction and thus subject to the Court's consideration, *see* Mot. Ex. A, ECF No. 2-3, asserts that the Letter of Intent was provided in accordance with VCU's Faculty Promotion and Tenure Policies and Procedures and "Paragraph 7 of the Standard Terms and Conditions of Employment, which is incorporated in the tenured faculty appointment letter that [Plaintiff]

executed on June 30, 2025." *Id*. The Letter of Intent invites Plaintiff to submit "any additional information" and "any written documentation that serves to mitigate the circumstances involved in this matter no later than Tuesday, February 2, 2026 at 5pm." *Id.* at 2. The Letter of Intent further states that Plaintiff could request a meeting with Defendant Kates to discuss the matter. *Id.* Finally, the Letter of Intent warned Plaintiff, "If you choose not to respond or your response does not serve to sufficiently mitigate the circumstances described in this letter, I will proceed with the proposed termination of your employment." *Id.*

Based on this record, it is apparent that Plaintiff was afforded *some* notice and opportunity to be heard, albeit not to the extent (or pursuant to the policy) he would prefer. The ultimately issued Termination Letter of February 3, 2026, makes clear that Plaintiff's response to the Letter of Intent was received and reviewed, and Plaintiff's arguments were addressed in the Termination Letter accordingly. Plaintiff makes no argument or showing that, were he afforded the process he claims VCU eschewed in this circumstance, there would have been a different outcome with respect to his employment. Absent representations or evidence to that effect, the Court cannot assign any weight to "the risk of an *erroneous* deprivation of [his employment interest] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Doe*, 77 F.4th at 237 (citing *Elhady v. Kable*, 993 F.3d at 228)). Weighing then purely Plaintiff's interest in his continued employment against the Government's interest in conducting an efficient for-cause termination of an employee who (by its estimation) has "fail[ed] to perform the normal and expected research and other services within the areas of presumed professional competence, . . . fail[ed] to fulfill University assignments, and/or [exhibited] unprofessional conduct that significantly adversely affects the functioning of the department, school, or University," Mot. Ex. A, ECF No. 2-3, the Court cannot find that Plaintiff is likely to

6

succeed in establishing that the notice and opportunity to be heard in this instance were constitutionally deficient. *See Doe*, 77 F.4th at 236–37.

Accordingly, Plaintiff has not demonstrated a likelihood of success on the merits of his Fourteenth Amendment claim, and so he cannot establish all the necessary *Winter* factors entitling him to either temporary or preliminary injunctive relief.

## IV.  CONCLUSION

For the foregoing reasons, the Court will deny Plaintiff's Motion. An appropriate Order will accompany this Memorandum Opinion.

Date: February 6, 2025
Richmond, Virginia

/s/ RCY
Roderick C. Young
United States District Judge